UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALISA J. K.,[1]<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. 8:20-cv-00715-AFM<br><br>**MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF THE COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying her application for disability insurance benefits. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

In August 2016, Plaintiff applied for disability insurance benefits, alleging that she became disabled on July 22, 2015. (Administrative Record ["AR"] 173, 178.) Plaintiff's application was denied initially and on review. (AR 96-100, 102-106.) On

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

February 4, 2019, a hearing took place before an Administrative Law Judge ("ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. (AR 29-63.)

In a decision dated March 12, 2019, the ALJ found that Plaintiff suffered from the medically determinable impairments of trigeminal neuralgia, hyperacusis, migraines, and high frequency sensorineural hearing loss. (AR 17.) However, the ALJ found that none of Plaintiff's impairments alone or in combination significantly limited her ability to perform basic work-related activities and, therefore, she did not have any severe impairment. (AR 17.) As a result, the ALJ found Plaintiff not disabled. (AR 20.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-6), rendering the ALJ's decision the final decision of the Commissioner.

**DISPUTED ISSUES**

1. Whether the ALJ erred in finding that Plaintiff did not suffer from a severe medical impairment at Step Two of the sequential evaluation process.

2. Whether the ALJ properly rejected Plaintiff's subjective complaints.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Under the substantial-evidence standard, this Court asks whether the administrative record contains sufficient evidence to support the Commissioner's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). As the Supreme Court observed in *Biestek*, "whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high." *Id*. It means "more than a mere scintilla" but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

389, 401 (1971). This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

Plaintiff contends that the ALJ erred in determining she does not have any severe impairments at Step Two of the sequential evaluation process. In particular, Plaintiff points to the medical evidence establishing severe impairments and argues that the ALJ cherry-picked the evidence to support his decision. Plaintiff also argues that the ALJ improperly rejected the opinions of every physician who examined Plaintiff as well as the State agency reviewing physicians. (ECF No. 18 at 3-7.) The Commissioner argues that the ALJ properly assessed the medical evidence at Step Two and that Plaintiff failed to meet her burden to show that she suffered from impairments that significantly limited her ability to perform basic work activities. (ECF No. 19 at 5-8.)

A.  Relevant Law

At Step Two of the sequential evaluation process, the claimant has the burden to show that she has one or more "severe" medically determinable impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). An impairment is "not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522; *see Webb*, 433 F.3d at 686. Basic work activities means "the abilities and aptitudes necessary to do most jobs," including: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes

in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

The Step-Two inquiry is "a de minimis screening device to dispose of groundless claims." *Webb*, 433 F.3d at 687 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1158-1159 (9th Cir. 2001) (discussing this "de minimis standard"). An impairment or combination of impairments can be found not severe "only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Smolen*, 80 F.3d at 1290 (internal quotation marks and citation omitted). Further, at Step Two, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen*, 80 F.3d at 1290 (citation omitted). The ALJ's determination that Plaintiff did not have a medically severe impairment or combination of impairments must be "clearly established by medical evidence." *Webb*, 433 F.3d at 687 (Social Security Ruling ("SSR") 85-28).

B. Medical Evidence

Plaintiff underwent surgery to repair a retinal tear in July 2015. (AR 1247, 1253-1262, 1332.) Following surgery, Plaintiff developed severe photophobia and headaches. (AR 1174-1176, 1244, 1317-1318, 1374, 1377, 1425, 1437, 1446-1447, 1453, 1721.) Before and after surgery, Plaintiff suffered from vitreous floaters. (AR 1261-1262.) She was diagnosed with vitreous degeneration. (AR 1323.)

Over the next year, Plaintiff complained of migraine headaches, dizziness, and difficulties with balance. (AR 716-718, 1052, 1174-1176, 1233, 1424, 1431, 1446.) She was diagnosed with severe cerebellar degeneration/dysfunction[2] and trigeminal neuralgia.[3] (AR 1475-1476.)

---

[2] "Cerebellar degeneration is a process in which neurons (nerve cells) in the cerebellum - the area of the brain that controls coordination and balance - deteriorate and die." https://www.ninds.nih.gov/disorders/All-Disorders/Cerebellar-Degeneration-Information-Page.

[3] Trigeminal neuralgia is "a chronic pain condition that causes extreme, sporadic, sudden burning or shock-like face pain. ... The attacks often worsen over time, with fewer and shorter pain-free

In October 2015, Plaintiff was diagnosed with "multiple retinal breaks of left eye-New"; "vitreous degeneration of both eyes-New"; and "age-related nuclear cataract of both eyes-New." (AR 1437-1438.) Treatment notes from November 2015 indicate Plaintiff's secondary trigeminal neuralgia and photophobia were "progressively getting better over time." (AR 1433-1435.)

Plaintiff underwent physical therapy for signs and symptoms of vestibular hypofunction, affecting her gaze stability and balance. (AR 1371.)

In January 2016, Plaintiff appeared for a follow-up regarding secondary trigeminal neuralgia and photosensitivity. She reported that her light sensitivity had improved to the extent that she no longer required sunglasses at night when she is driving. However, she continued to suffer migraines from looking at light and had daily headaches. She also complained of vertigo. (AR 1429.) Examination was essentially normal. Plaintiff's photophobia and trigeminal pain were noted to be improving. (AR 1430-1431.)

In February 2016, Plaintiff reported that photophobia and eye pain had improved since she started vestibular therapy. She still experienced headaches, but they were "not as bad." Exposure to lights still caused headaches. Treatment notes state that trigeminal neuralgia, photophobia and headache were all improving. (AR 1425-1428.)

In March 2016, Plaintiff's physician, Brian T. Kim, M.D., recommended she see a neruoophthalmologist. (RT 1313.)

In May 2016, Baruch Kuppermann, M.D., performed an ophthalmological examination. Plaintiff again complained of severe photosensitivity, floaters, and flashing lights. (AR 1416-1417.) Dr. Kupperman's impression included secondary trigeminal neuralgia-stable; photophobia of left eye-stable; headache-stable; multiple defects of left retina without detachment-stable; and epiretinal membrane, left eye-

---

periods before they recur." https://www.ninds.nih.gov/Disorders/All-Disorders/Trigeminal-Neuralgia-Information-Page.

5

stable. (AR 1418-1419.) He recommended referral to an expert at UCLA because Plaintiff's condition was "complex" and "unusual." (AR 1419.)

In June 2016, Plaintiff continued to complain of extreme photophobia. Examination findings included epiretinal membrane with mild macular thickening and mild lattice degeneration. (AR 1453-1455.)

In November 2016, Plaintiff underwent an orthopedic evaluation for complaints of lower back pain. X-rays of Plaintiff's lumbar spine showed mild to moderate degenerative disc disease throughout with mild facet arthropathy. X-rays of Plaintiff's cervical spine showed moderate to severe degenerative disc disease at C6-7, mild disc degeneration at C4-5 and C5-6, and scattered mild to moderate facet arthropathy. Treatment notes indicated that Plaintiff's headaches could be cervicogenic in nature. (AR 1458-1461.)

In January 2017, Plaintiff underwent a retinal examination by Timothy T. You, M.D. Dr. You diagnosed Plaintiff with multiple retinal defects without detachment OS, lattice degeneration of retina OS, posterior vitreous detachment OU, and epiretinal membrane OS. (AR 1227-1228.)

<u>Medical Opinions</u>

In November 2018, Plaintiff's treating neurologist Joey Gee, M.D., completed a functional assessment questionnaire. Dr. Gee diagnosed Plaintiff with migraines and photosensitivity and stated that her symptoms included vertigo and visual disturbances. He opined that she would need to take unscheduled breaks daily and her condition would cause her to miss work more than four times a month. (AR 1201-1206.)

Mary Raleigh, D.O., diagnosed Plaintiff with migraines, headaches, vertigo, trigeminal neuralgia, photophobia, PTSD, and visual disturbances. In Dr. Raleigh's opinion, many of Plaintiff's symptoms were caused by noise and light. Dr. Raleigh noted x-ray results showing spinal degeneration. In September 2018, Dr. Raleigh completed functional capacity questionnaires in which she opined that Plaintiff

would miss work more than four times a month due to headaches. Dr. Raleigh also opined that Plaintiff's back and neck issues caused limitations in sitting, standing, and walking for long periods of time. (AR 1190-1195, 1196-1200.)

April Spurling, O.D., diagnosed Plaintiff with photophobia, vertigo, trigeminal neuralgia, headaches, and visual midline shift syndrome. In November 2018, Dr. Spurling opined that Plaintiff can rarely engage in near acuity and depth perception, and occasionally perform far acuity, color vision, and field of vision. Dr. Spurling also opined that Plaintiff had limitations, including problems working with small and large objects and walking up and down stairs. (AR 1207-1210.)

State agency consultants reviewed Plaintiff's medical record and concluded that she suffered from two severe medially determinable impairments – namely, disorders of the nervous system and visual impairment. The medical consultants opined that Plaintiff was limited to light work. (AR 72-94.)

### C. The ALJ's decision

In finding Plaintiff's impairments were not severe, the ALJ characterized the medical evidence as "benign." (AR 19.) The ALJ then briefly discussed the medical evidence. While the ALJ noted Plaintiff's eye surgery, he cited a page of the record in which Plaintiff reported that her symptoms were progressively getting better. He also cited numerous pages showing Plaintiff's visual acuity was 20/20. (AR at 19.) According to the ALJ, Plaintiff "began complaining of trigeminal neuralgia and photosensitivity." However, the ALJ apparently discounted those diagnoses because a brain MRI showed no abnormalities. (AR 19.) Last, the ALJ addressed the diagnosis of hyperacusis possibly related to migraines, but discounted it, citing routine office visits which documented "unremarkable physical examination," such as normal gait, good range of motion, and normal neurological examination. (AR 19.)

The ALJ then briefly addressed and rejected all of the medical opinions. First, the ALJ noted a letter in which Dr. Gee stated that Plaintiff was under his care and she was being placed on medical disability "due to a pain disorder that is severe and

interferes with her normal function." (AR 19, citing AR 1463.) The ALJ rejected Dr. Gee's opinion "since the issue of disability is reserved to the Commissioner." (AR 19.)

With respect to the functional limitations contained in the opinions of Drs. Gee, Spurling, and Raleigh, the ALJ concluded they were entitled to little weight because they were not consistent with "the treating notes as a whole." (AR 20.) Similarly, the ALJ noted that three State agency consultants had opined that Plaintiff is limited to light work. He rejected these assessments finding them "not consistent with unremarkable physical examination." (AR 20.)

### D. Analysis

The ALJ found that Plaintiff did not have a medically severe impairment despite objective medical evidence demonstrating trigeminal neuralgia, severe photophobia, migraine headaches, visual disturbances, and disc disease. In reaching this conclusion, the ALJ erroneously focused exclusively on a subset of the medical evidence showing that certain diagnostic tests were within normal limits and Plaintiff's intermittent reports that her symptoms had improved. The ALJ's selective recitation of the evidence fails to account for the record as a whole and instead amounts to improper "cherry-picking" of the record to cite evidence supporting an adverse determination. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). Further, evidence that Plaintiff's "complex" chronic conditions were either stable or sometimes "improving," without more, does not necessarily mean that those impairments are no more than a "slight abnormality," as required to terminate the sequential evaluation procedure at Step two. *See Smolen*, 80 F.3d at 1289-1290.

Substantial evidence does not support the ALJ's finding that the medical evidence clearly established an absence of any medically severe impairment or combination of impairments. To the contrary, as set forth in above, the medical evidence documenting Plaintiff's treatment for trigeminal neuralgia, severe

photophobia, migraine headaches, visual disturbances, and disc disease is sufficient to pass the de minimis threshold of Step Two. *See Webb*, 433 F.3d at 687-688 (the record before the ALJ "includes evidence of problems sufficient to pass the de minimis threshold of step two" and is distinguishable from cases in which there was a "total absence of objective evidence of [a] severe impairment"); *Ortiz v. Comm'r of Soc. Sec.*, 425 Fed. Appx. 653, 655 (9th Cir. 2011) ("This is not the total absence of objective evidence of severe medical impairment that would permit us to affirm a finding of no disability at step two."); *cf. Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (claimant failed to satisfy the Step Two burden where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results.").

Moreover, the ALJ's conclusion is contrary to all the medical opinions, including those of the State agency physicians, who found Plaintiff's impairments to be severe and opined that those impairments cause various functional limitations on Plaintiff's ability to perform work-related activity. With respect to the functional limitations contained in the opinions of Drs. Gee, Spurling, and Raleigh, the ALJ concluded they were entitled to little weight because they were not consistent with "the treating notes as a whole." (AR 20.) To support of this conclusion, the ALJ cites a single page of the record in which Plaintiff "reported she felt well and had no headaches" (AR 20, citing AR 967) and refers to evidence that "physical examination was within normal [limits] as documented above." (AR 20.) An ALJ may discredit treating physician's opinion that is unsupported by the record as a whole or by objective medical findings. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004). However, simply stating that a medical opinion is inconsistent with the overall evidence in the record "is not a specific reason for rejecting the opinion; it is nothing more than boilerplate." *Carmona v. Berryhill*, 2017 WL 3614425, at *4 (C.D. Cal. Aug. 22, 2017). Furthermore, as mentioned above, the physical examinations that the ALJ "documented" consist of a selected subset of the medical

9

evidence supporting his conclusion. The same is true regarding the opinions of the State agency physicians: He rejected them as not consistent with "unremarkable physical examination." (AR 20, citing AR 734, 737, 741, 807, 936-937, 983, 997, 1053, 1060,[4] 1145, 1151, 1156, 1460, 1469,[5] 1475, 1501, 1511, 1971, 2131.) Most of the pages cited by the ALJ document Plaintiff's respiratory, cardiovascular, gastrointestinal, musculoskeletal, psychiatric, skin, or neurological conditions are unrelated to the medical impairments upon which most physician's opinions relied – that is, Plaintiff's retinal issues, including photophobia. (*See, e.g.*, AR 983, 997, 1053, 1145, 1151, 1460, 1475, 1501, 1511, 1971, 2131.) Finally, the Court notes that the ALJ failed to explain how some of the evidence he relied upon is inconsistent with the medical opinions, and it is not evident to the Court that it is. For example, the ALJ emphasized evidence showing that Plaintiff visual acuity was 20/20. It is not clear how 20/20 vision undermines functional limitations imposed based on diagnoses of photophobia, migraine headaches, or trigeminal neuralgia.

In defending the ALJ's determination that Plaintiff's physical impairments were non-severe, the Commissioner makes arguments and cites portions of the record not relied upon by the ALJ. (ECF No. at 19 at 5-8.) The Court's review, however, is limited to the reasons the ALJ actually articulated in his decision. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-1226 (9th Cir. 2009); *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

Accordingly, "[t]he ALJ should have continued the sequential analysis beyond Step Two because there was not substantial evidence to show that [Plaintiff]'s claim

---

[4] The ALJ cites Ex. 22F/10. (AR 20.) That page (AR 1060) contains no physical examination results. The physical examination findings from that office visit are found on the prior page, and include (among other things), intact heel/toe walking; limited range of motion in the lumbar spine; mild neck and trapezium pain on extension; positive Spurling's maneuver. (AR 1059.)

[5] The ALJ cites Ex. 46F/3. (AR 20.) That page (AR 1469) consists of Plaintiff's visual symptom questionnaire where she indicates she frequently suffers from numerous visual symptoms. It is not clear how this evidence is inconsistent with any physician's opinion.

was "'groundless.'" *See Webb*, 433 F.3d at 687-688 (citing *Smolen*, 80 F.3d at 1290); *see also Gurrola v. Colvin*, 2014 WL 4810321, at *3-4 (C.D. Cal. Sept. 25, 2014) (substantial evidence did not support ALJ's finding that plaintiff's physical impairments were not severe, singly or in combination, and ALJ's error also tainted the ALJ's evaluation of the credibility of plaintiff's subjective complaints at Step Two).

Finally, the Court cannot conclude that the ALJ's error here was harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("We recognize harmless error applies in the Social Security context."). Because the ALJ erroneously found that Plaintiff's impairments were not severe, he did not proceed beyond the de minimis threshold of Step Two and consequently failed to adequately discuss those impairments later in the sequential evaluation. *Robert R. v. Berryhill*, 2019 WL 538994, at *4-5 (C.D. Cal. Feb. 11, 2019) (Step Two error not harmless because the ALJ stopped analysis at Step Two and did not discuss impairments at Step Four of the sequential evaluation); *cf. Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (any Step Two error was harmless where "ALJ extensively discussed" condition "at Step 4 of the analysis").

## REMEDY

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-1178 (9th Cir. 2000). "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Indeed, Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next

review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record is not fully developed, and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act). Accordingly, the appropriate remedy is a remand for further administrative proceedings.[6]

## ORDER

IT IS THEREFORE ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED: 11/24/2020

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

---

[6] In light of this conclusion, the Court declines to resolve Plaintiff's remaining claims. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."). It is not the Court's intent to limit the scope of the remand.